UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIAN R. WAGENER and )<br>DONALD F. CHAMPOUX, et. al., )<br>       )<br>       Plaintiffs, )<br>       )<br>vs.    )<br>       )<br>SBC PENSION BENEFIT PLAN- )<br>NON-BARGAINED PROGRAM, )<br>       )<br>       )<br>       Defendant. ) | Case No. 1:03-CV-00769 (RCL) |

## MEMORANDUM OPINION

Pending before the Court is defendant's Motion for a Protective Order [45], and plaintiff's Opposition to defendant's Motion for a Protective Order and Cross-Motion to Compel Responses to Discovery and Enforce Subpoenas [54]. These motions involve closely related issues, and the Court will resolve these two motions together in one Memorandum Opinion and Order. For the reasons set forth below, the Court has determined that defendant's Motion for a Protective Order shall be GRANTED and plaintiff's Cross-Motion to Compel shall be DENIED.

### BACKGROUND

Defendant SBC Pension Benefit Plan – Non-Bargained Program ("the Plan"), pursuant to Rule 26 of the Federal Rules of Civil Procedures has filed a motion for Protective Order With Respect to the Scope of Discovery. The named plaintiffs represent a class of employees who received an enhanced pension benefit from the Plan in connection with an early retirement program ("EPR"). (Def.'s Mot. 1.) SBC Communications, Inc. ("SBC") is the Plan sponsor and is a named fiduciary of the Plan.

The Benefit Plan Committee ("BPC") is another named fiduciary of the Plan, and has primary responsibility for the review of claims for benefits under the Plan. (Pl.'s Opp. 10.)

Plaintiffs worked for companies that are affiliated with the Plan sponsor, SBC Communications, Inc. ("SBC"). Plaintiffs Marian Wagener and Donald Champoux are both participants in the Plan and, in November 2000, they retired pursuant to an enhanced benefit program that was designed to encourage early retirement. The calculation of benefits under the terms of this program depends in part on the amount of a participant's compensation between January 1, 1995 and December 31, 1999. The plaintiffs' suit turns on how to calculate their compensation during this period. According to the defendant, plaintiffs' compensation between January 1, 1995 and December 31, 1999 includes only the amount of pay plaintiffs actually *received* during this period, thus excluding a paycheck that Wagener and Champoux received on January 5, 2000 for work they performed in 1999. By contrast, Wagener and Champoux argue that their level of compensation for benefit calculation purposes includes compensation *earned* between January 1, 1995 and December 31, 1999, even though one paycheck for this period was received at the beginning of the 2000 calendar year. They also allege that other similarly situated Plan participants have been paid benefits based on compensation earned, not received, in the base period, thus confirming their entitlement to benefits under a non-discrimination clause in the Plan.

The named plaintiffs and three other EPR beneficiaries sought additional benefits from the Plan based on their claim that 23 rather than 24 pay periods were included in the compensation for 1999 that was used to compute Average Annual Compensation for

purposes of calculating the EPR benefit. (Def.'s Mot. 1-2). Their benefit claims were then denied by the BPC. (*Id.* 2). The BPC's decision to deny their claims was based on its interpretation of the amendments that required the use of actual base pay rather than the basic rate of pay, in computing the Average Annual Compensation (the "actual base pay amendments"). (*Id.*). This Court, finding the BPC's interpretation to be reasonable, dismissed the plaintiffs' Complaint. (*Id.*)

Plaintiffs appealed to the United States Court of Appeals for the District of Columbia Circuit. *See Wagener v. SBC Pension Benefit Plan – Non-Bargained Program*, 401 F.3d 395 (D.C. Cir. 2005). The D.C. Circuit held that if the otherwise reasonable interpretation of "actual base pay" was contrary to the way in which another provision of the Plan had been applied (referred to by the court as the "equal treatment clause"), the BPC's decision to deny benefits would be unreasonable. *Id*. at 403-04. Therefore, the D.C. Circuit sent the case back to this Court to determine whether the interpretation of "actual base pay" rendered by the BPC "or other Plan fiduciaries with responsibility for construing and administering the Plan" was inconsistent with the equal treatment clause. *Id.* at 404. The D.C. Circuit also acknowledged that plaintiffs claimed the BPC operated under a conflict of interest, because plaintiffs alleged that the Plan was "underfunded" at the time the BPC made its decisions. *Id*. at 402. The D.C. Circuit remanded the case to this Court.

## ANALYSIS

### A. Standard of Review

A participant or beneficiary of an employee benefit plan may file suit under ERISA Section 502(a)(1)(B) "to recover benefits due to him under the terms of the plan,

to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, (1989), the Supreme Court held that federal courts must apply a *de novo* standard of review to a denial of benefits challenged under section 1132(a)(1)(b), "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan".  "In this later category of cases, the standard of review – variously described by the Court as 'arbitrary and capricious' and 'abuse of discretion' review – is plainly deferential." *Wagener*, 407 F.3d at 402 (citing *Firestone*, 489 U.S. at 111-115.).  Courts within this jurisdiction have allowed discovery in order to determine whether a conflict of interest exists because "information regarding a potential conflict of interest will be relevant to the trial court's determination of the applicable standard of review." *See, e.g., Pulliam v. Cont'l Cas. Co.,* 2003 WL 1085939, at *3 (D.D.C. Feb. 27, 2003); *Hurley v. Life Ins. Co. of N. Am.*, 2006 WL 1883406 (D.D.C. July 9, 2006).  At this time, however, the Court will not determine which standard is applies in the instant case.

### B. Motion to Compel

The Court notes that the plaintiffs listed several specific requests in their Cross-Motion to Compel (Pl.'s Opp. 55-64), but withdrew their motion with respect to RFP No. 29, Subpoenas ¶ 27; RFP No. 41, Subpoenas ¶ 39; and Interrogatory No. 4 based on the representations obtained.  (Pl.'s Reply 29 n. 38.)

*1. Request for Production No. 1*

This request asks for "all documents concerning the history, purpose, consideration, planning, analysis, drafting, adoption, or proposed adoption of the Actual

4

Base Pay Amendments." (Pl.'s Reply Br. 30.)  The plaintiffs describe this as the "legislative history" of the amendments.  (*Id.*)  However, the Plan argues that the history and purpose of the amendments are not part of the administrative record.  (Def.'s Reply 36-39.)  The Plan argues that BPC did not participate in the creation and adoption of the amendments, and that those duties were left to SBC. (Def. Reply 36.)  The Plan also argues that SBC does not have authority to make final determinations of benefits claims. (*Id.*)  The BPC is the sole fiduciary for responsible interpretation and final resolutions of claims under the Plan.  (*Id.*  32-43.)  Therefore, the Plan argues that only information presented to the BPC is relevant and discoverable.  (*Id.*)  Furthermore, information available to SBC but not presented to the BPC is irrelevant because only the BPC makes final determinations of benefits claims.

The D.C. Circuit remanded this case to determine whether the BPC's decisions were tainted by conflicts of interest, and whether the BPC complied with the equal-treatment clause of the Plan.  *Wagener*, 407 F.3d at 402-03.  These questions only relate to "Plan fiduciaries with responsibility for construing and administering the Plan, [and] to adopt Plan interpretation that directly contravene the plain meaning of the Plan's governing provisions" with respect to benefit claims.  *Id*. at 404.  The Plan clearly states that the BPC is solely authorized to make benefit claim determinations.  Section 3.5.4 of the Plan states that "The Committee . . . shall have full and exclusive authority and discretion to grant and deny claims under the SBCPBP."  (Def.'s Reply 32.)

Because the BPC has exclusive authority to grant and deny claims, information beyond the BPC's administrative record must be shown to be relevant to determining the questions of a conflict of interest or its compliance with the equal-treatment clause.  The

Plaintiffs' arguments are not persuasive that SBC's knowledge of the amendments are relevant. Therefore, the Court DENIES plaintiffs' cross-motion for responses to RFP No. 1.

*2. Request for Production Nos. 9, 26, and 27.*

These requests ask for documents relating to the January 1, 2000 amendment defining actual base pay; documents relating to the CAM amendment which resembled the Grandfathered Benefit in design; and documents relating to the October 31, 2001 amendment retroactively creating a distinction between the calculation of the Grandfathered Benefit and the calculation of the EPR Enhanced Grandfathered benefit. (Pl.'s Opp. 55.) Again, the plaintiffs have failed to show how these documents created by SBC are relevant to discovery of the issues on remand. The plaintiffs have not alleged how the production of these documents will lead to the discovery of any information that concerns the conflict of interest or BPC compliance with the equal-treatment clause of the Plan. For these reasons and those stated for RFP No. 1, the Court DENIES plaintiffs' cross-motion to compel responses to RFP Nos. 9, 26, and 27.

*3. Request for Production No. 4; Subpoena ¶ 3.*

RFP No. 4 seeks sample calculations for 10 randomly selected individuals for each employer whose employees are covered by the Plan for each type of benefit – Grandfathered, Enhanced Grandfathered, Disability and cash Balanced, demonstrating the application of the Actual Base Pay amendments. (Pl.'s Reply Br. 30.) These calculations were to be produced by Affiliated Computer Systems, Inc. ("ACS") which administered the Plan on a day-to-day basis. (Pl.'s Opp. 56.)

The defendant has persuasively shown that the requested calculations do not exist in any form – electronic, paper, or otherwise. Therefore, the Plan has no responsive documents to produce. (*see* Def.'s Surreply Ex. A, Affidavit of Curtis Morgan.) Because these calculations do not already exist in any form, the Plan is not required to create documents under the Federal Rules of Civil Procedure. *See e.g., Alenander v. Fed. Bureau of Inv.*, 194 F.R.D. 305, 310 (D.D.C 2000). ("Therefore, Rule 34 only requires a party to produce documents that are already in existence. . . . A party is not required 'to prepare, or cause to be prepared,' new documents solely for their production.") (*quoting Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co.*, 576 F. Supp. 511 (W.D.Pa. 1983)). Therefore, the Court DENIES plaintiffs' cross-motion to compel RFP No. 4; Subpoenas ¶ 3.

*4. Request for Production No. 5; Subpoena ¶ 5.*

This request seeks documents concerning all studies analyzing the potential or actual effect of the Plan's adoption of the actual base pay amendments. (Pl.'s Opp. 57.) The Plan states that it has produced the reports responsive to the request. (Def. Reply 48.) The plaintiffs made no further mention of this request in their reply brief, nor did the defendants mention it in their surreply brief. The Court finds the defendant's response satisfactory and DENIES plaintiffs' cross-motion to compel further responses to RFP No. 5; subpoena ¶ 5.

*5. Request for Production No. 22, subpoena ¶ 23.*

RFP No. 22 seeks all documents referred to or providing support for the answers to Interrogatory No. 4. (Pl.'s Opp. 57). The plaintiffs have withdrawn their cross-motion to compel a response to this Interrogatory (Pl.'s Reply 29 n. 38); however, they still seek

7

documents produced by ACS for the benefit calculations of all participants receiving the Grandfathered benefit retiring in 2000. (Pl.'s Opp. 58.) ACS has produced 8 sample calculations (*Id.*), and provided the programming instructions used by the computer system to make the calculations. (Def.'s Surreply Ex. A ¶ 4-5.) ACS's Managing Director stated in his affidavit that the documents plaintiffs seek do not exist. (*Id.* ¶ 7-8.) The defendant is not required to produce documents that do not exist. *See Alexander*, 194 F.R.D. at 310. Therefore, plaintiffs' cross-motion to compel RFP No. 22, subpoena ¶ 23 is DENIED.

*6. Request for Production No. 30, subpoena ¶ 28.*

This requests asks for documents relating to Reed Newlin's communications with SBC lawyer Frank Magill, Magill's communications with others regarding Mr. Newlin's email, and documents reflecting other internal communications and actions taken in the wake of Mr. Newlin's e-mail. (Pl.'s Opp. 59.) The Plan stated that it produced the documents responsive to this request. (Def.'s Reply 50.) Plaintiffs argue that the defendant and recipients of the subpoenas have provided no accountable statements that they have conducted a diligent search for responsive documents. (Pl.'s Reply 50).

In its surreply, the defendant states that the Plan and the recipients of the subpoena have produced the documents they have located that are responsive to the request. (Pl.'s Surreply 17.) The plan requested persons at AT&T who may have responsive information in their files to gather such documents, which have been produced. (*Id.*) The Plan conducted a search for these documents by hiring a third party vendor to run searches for the terms "Newlin," "Champoux," and the names of other claimants on the computer hard drives of persons at AT&T. (*Id.*) The Court is satisfied

8

with the Defendant's responses, and the Plaintiffs' cross-motion to compel further responses to RFP No. 30; subpoena ¶ 28 is DENIED.

*7. Request for Production No. 31, subpoena ¶ 39.*

This requests seeks documents relating to a letter sent from Bradley Hickman to Mr. Newlin dated November 9, 2001, and gives six examples pertaining to the request. (Pl.'s Opp. 59-60.) Examples 1, 2, and 4 request "all documents tending to support or refute" certain contentions made by Mr. Hickman in the letter. (*Id.* at 60.) Example 3 requests all documents identifying any person involved in the "review" referred to by Mr. Hickman. Examples 5 and 6 request all documents reviewed by Mr. Hickman in drafting the letter, and all documents relating to any legal advice in connection with the letter. (*Id.*) The Plan objects to examples 1-4 as vague and irrelevant, and has produced the documents it has located that reference Mr. Hickman's letter including all drafts, e-mails referencing the letter, and all internal discussion related to the letter. (Def.'s Reply 50.)

The Court finds that examples 1, 2, and 4, requesting "documents tending to support or refute" Mr. Hickman's contentions in the letter, are vague and ambiguous. *See Medtronic Sofamar Danek, Inc. v. Michelson*, 2003 WL 23407605 at *6 (W.D. Tenn. Dec. 2, 2003) (holding that the plaintiff's request for the production of documents that "support or refute plaintiff's allegations" as vague and/or ambiguous). The plaintiffs attempt to distinguish its own requests from those in *Medtronic*. (Pl.'s Reply 33.) Plaintiffs argue that their requests do not refer to its own allegations about the defendant, but they concern specific comments made in Mr. Hickman's letter. (*Id.*) This is not persuasive. Any documents that support or refute particular subjects addressed in the

9

letter could include a vast number of different things relating to the actual base pay amendments that have no connection to Mr. Hickman's letter.

The Plan's production of documents including drafts of the letter, e-mails referencing the letter, and all internal discussion related to the letter are sufficient to comply with the request. Therefore, plaintiffs' cross-motion to compel further responses to RFP No. 31; subpoena ¶ 39 is DENIED.

### 8. Request for Production No. 35, subpoena ¶ 33.

This request seeks documents relating to any participants' challenge to an exclusion of pay for work performed during any participants' Averaging Period and/or delay in the recognition of pay as defined. (Pl.'s Opp. 61.) Within this request, plaintiffs refer to an e-mail which mentions a chronology not yet provided to Mr. Champoux pursuant to his request for records. (*Id.*). Plaintiffs request this "chronology" and all documents relating to why it was not provided to Mr. Champoux or other EPR retiree claimants. (*Id.*) The Plan states that it has produced the documents it has located that are responsive to this request, and has not withheld any documents responsive to this request as privileged. (Def.'s Reply 50.) The Plan has provided the "chronology" (PLAN001120) as referenced in PLAN002706, Ex. 27, and it has not located any documents related to why it was not provided to Mr. Champoux. (*Id.*) The Court is persuaded that the Plan has responded to plaintiffs' request, therefore, the cross-motion to compel further responses to RFP No. 35; subpoena ¶ 33 is DENIED.

### 9. Request for Production No. 42, subpoena ¶ 40.

This request seeks communications between and among a small identifiable group of individuals who were involved in the administration of the Plan concerning (a) the

actual base pay amendments, (b) the notice sent to plan participants informing them of those amendments, (c) the EPR program, and (d) the named plaintiffs' claims for benefits.  (Pl.'s Reply 34.)  The Plan has produced the documents responsive to (b) and (d). (Def.'s Reply 51.)  The Plan objects to (a) and (c) as overbroad and irrelevant, because the plaintiffs seek discovery relating to all documents received, looked at, created by, addressed to, or copied to the identified individuals that "relate to" anything about the actual base pay amendments or the EPR program.  (*Id.*)  This request is tremendously overbroad and seeks discovery beyond the scope of what is relevant to this case.  Anything that relates to the actual base pay amendments or EPR program would include voluminous records of information that is not related to the plaintiffs' claims.  Therefore, the Court DENIES the plaintiffs' cross-motion to compel responses to (a) and (c) of RFP 42, subpoena ¶ 40.

### *10. Allegedly Privileged Documents.*

Plaintiffs state that throughout the Plan's responses to plaintiffs' first set of discovery requests the Plan responds that it will produce "non-privileged documents" responsive to the requests. (Pl.'s Opp. 63.)  The Plan has not produced a privilege log or identified any privileged documents, and Plaintiffs argue that privilege has been waived and those documents should be produced. (*Id.*)  However, "if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections." *U.S. v. Philip Morris, Inc.*, 347 F. 3d 951, 954 (internal citations omitted).  The Plan has timely objected to the Plaintiffs' discovery requests, and privilege has not been waived.  However, the Plan is now obliged to produce a privilege log in response to plaintiffs' motion to compel, and the plan shall do

so within 10 days of this date.  Plaintiffs may then seek to compel the production of any documents as to which defendant has claimed privilege within 10 days after the production of the privilege log.

### C. Motion For Protective Order

Under Federal Rule of Civil Procedure 26(c), courts have broad discretion to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). Pursuant to this, the Plan argues that the discovery should be limited to two issues on remand. (Def. Mot. 3.) First, discovery should be limited to whether the BPC or other fiduciary with responsibility for construing and administering the Plan complied with the equal-treatment clause in its application of the actual base pay amendment. (*Id.*) Relevant to that determination is whether there have been inconsistent interpretations of the actual base pay standard by Plan fiduciaries with authority to make those determinations. (*Id.*) Second, discovery should be limited to whether the BPC was operating under a conflict of interest when it denied plaintiffs' claims for additional benefits because the Plan was allegedly underfunded. (*Id.*) These issues are consistent with the D.C. Circuit's directions for remand in *Wagener*, 407 F.3d 395.

The plaintiffs argue that discovery cannot be limited to the administrative record and the decisions of the BPC. (Def.'s Opp. 4-5.) Instead, plaintiffs argue that because SBC is a Plan fiduciary with responsibility for interpreting the Plan and was responsible for the day-to-day administration of the plan, discovery should not be limited to the BPC's administrative record. (*Id.* 5.) However, plaintiffs do not sufficiently argue that SBC had the final authority in determining the claims or that the outcome of the

12

plaintiffs' claims were discriminatory in violation of the equal-treatment clause of the Plan. Furthermore, the plaintiffs have not shown that the discovery requests in their cross-motion to compel would produce documents that are relevant to a conflict of interest or a violation of the equal-treatment clause by BPC or SBC. Therefore, defendant's Motion for Protective Order with Respect to the Scope of Discovery is GRANTED.

## CONCLUSION

The Court DENIES plaintiffs' Cross-Motion to Compel Responses to Discovery and Enforce Subpoenas [70]. Furthermore, the Court GRANTS defendant's Motion for Protective Order with Respect to the Scope of Discovery [45].

An Order consistent with this Opinion will be entered.

Signed by Royce C. Lamberth, United States District Judge, March 26, 2007.